UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STEELWORKERS OF AMERICA, LOCAL 4-406<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL MATEX TANK TERMINALS, *aka* IMTT BAYONNE, LLC,<br><br>Defendant. | Civil Action No. 22-05083 (JXN) (MAH)<br><br>**OPINION** |

**NEALS**, District Judge

This matter comes before the Court on Defendant International Matex Tank Terminals, *also known as* IMTT Bayonne, LLC's ("Defendant" or "IMTT") Motion for Attorneys' Fees and Non-Taxable Costs against Plaintiff United Steel Workers of America, Local 4-406's ("Plaintiff" or the "Local") pursuant to Federal Rules of Civil Procedure 54 and Local Civil Rule 54.2. (ECF Nos. 42, 45.) Plaintiff opposed the motion (ECF Nos. 44, 47, 49), and Defendant replied in further support (ECF No. 50). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78 and L. Civ. R. 78.1. For the reasons set forth below, Defendant's motion will be **DENIED**.

### I. BACKGROUND

On or about January 25, 2017, the Local entered into a Collective Bargaining Agreement ("CBA") with IMTT. (Compl. ¶ 3.) The terms of the CBA provided for any grievances arising out of disputes between the parties to be decided by way of binding arbitration if the matter could not be settled. (Compl. ¶ 4; Exhibit A, CBA.) Under the CBA, the Local filed a grievance charging

the IMTT with a specific violation of Article X – Benefits, Paragraph (C), and other provisions of the CBA by IMTT's unilaterally changing the Medical "Plan" in violation of the CBA. (Compl. ¶ 5; Exhibit B, Opinion and Award.) Pursuant to the terms of the CBA, the parties submitted to binding arbitration on October 25, 2017, during which a hearing took place. (Compl. ¶ 8; Exhibit A, CBA, Article VIII.) Subsequently, on February 2, 2018, the Arbitrator issued an award in favor of the Local and against IMTT that provided as follows:

<u>AWARD</u>

1. The employer did violate Article X.C of the parties' collective bargaining agreement as alleged in Grievance No. 07052017.

2. There was a violation of NLRA Section 8(a)(5).

3. The employer shall (a) cease and desist from implementing is [sic] New Plan and from imposition [sic] changes to agreed terms and conditions of employment without having negotiated such changes and security the union's agreement; (b) cease and desist from imposing deductibles on any benefits but those specified in the body of Article X.C's table; (c) restore and implement the Old Plan with only the specified modifications that Article X provides; (d) reimburse George Abrams for the $428 above his $4,000 maximum payment and for his daughter's $8,020 prenatal genetic testing charge; (e) identify other bargaining unit employees whose claims were either denied or underpaid by reason of applying the New Plan instead of the Modified Plan, and reimburse them for the difference, and (f) post an appropriate remedial notice in accordance with relevant NLRB regulations.

(Compl., Ex. B, Opinion and Award; ECF No. 29-22 at 1.) The Arbitration Award was memorialized and notarized that same day. (Compl. ¶ 11; *see also* Opinion and Award.) The Local made a demand that IMTT comply with the Arbitration Award, but IMTT failed to pay and/or comply with the same. (Compl. ¶ 12.)

On July 11, 2022, the Local filed a Verified Complaint in the Superior Court of New Jersey, Hudson County, Law Division entitled *United Steelworkers of America Local 4-406 v. International Matex Tank Terminals aka IMTT Bayonne, LLC*, Docket No. HUD-L-002249-22 ("State Court Action"). (Notice of Removal ¶ 1, ECF No. 1.) In the Complaint, the Local sought

to confirm and/or enforce an arbitration award against IMTT. (*See generally* Compl.) On August 17, 2022, IMTT removed the action to this Court. (*See* Notice of Removal ¶¶ 6-9.)[1]

On September 29, 2023, the parties filed separate motions for summary judgment. (ECF Nos. 28; 29.) The motions were fully briefed. (*See* ECF Nos. 30-33.) On December 6, 2023, the Court held oral argument on the parties' motions. (*See* Transcript of December 6, 2023 Hearing ("T"), ECF No. 38.) During the hearing, IMTT's counsel argued, based upon its experience as the lead negotiator for IMTT during those negotiations, as to Krand's purported misconduct. (*See* T21:20-25; 22:1-20.) IMTT's counsel argued that the Local had no interest in filing its lawsuit, but rather, it was Krand. (*See* T22:11-25; 23:1-17.) In response, Plaintiff's counsel argued that there was no evidence in the record to support IMTT's argument that Krand had gone "rogue" and pursued this lawsuit without the support of the Local. (T28:22-25.) Plaintiff's counsel represented that Krand had taken a vote with the Local and that a majority of the members voted to go forward with the lawsuit. (*See* T29:4-19.)

In ruling from the bench, the Court noted that Plaintiff withdrew its enforcement of sections b and f of the Arbitration Award, conceding after discovery that these provisions were satisfied. (*See* T8:6-15; 35:24-25; 36:1-5.) The Court also noted that both parties had conceded that there was no challenge to the substance of the Arbitration Award. (*See* T36:8-12.) Next, the Court addressed the balance of the Arbitration Award, sections (a), (c), (d), and (e).[2] As to sections (a)

---

[1] IMTT removed on the basis that the Local's Complaint arose under a law of the United States regulating commerce, Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, et. seq. ("LMRA"), and therefore this Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1337, and this action is removable under 28 U.S.C. § 1441(a). (*Id.* ¶ 7.)

[2] The relevant sections of paragraph 3 of the Arbitration Award provide as follows:

> The employer shall (a) cease and desist from implementing is New Plan and from imposition changes to agreed terms and conditions of employment without having negotiated such changes and security the union's agreement; … (c) restore and implement the Old Plan with only the specified modifications that Article X provides; (d) reimburse George Abrams for the $428 above his $4,000 maximum payment and for his daughter's $8,020 prenatal genetic testing charge; (e) identify other

and (c), the Court found that the arbitrator contemplated negotiations in his actual award, and the parties' subsequent negotiation and development of the new CBA mooted any issue concerning these sections since the Court's ability to go back to that and modify anything subsequently negotiated by and between the parties "would not be a practical remedy." (T36:13-25, 37:1-8; 37:24-25, 38:1-6.) With regard to section (d), the Court found that George Abrams, in his deposition testimony, was unclear about whether he paid the $8,020.00 that would be due to him, which does not present any material issue of fact that he is entitled to reimbursement of those monies. Further, Plaintiff conceded that George Abrams was paid the initial $428.00. (*See* T38: 14-19.) Next, as to section (e), the Court found that nothing in the record showed any open items regarding reimbursement or any active claims that IMTT was aware of. (T37:9-23.) As a result, the Court granted summary judgment to IMTT and denied the Local's motion for partial summary judgment. (*See* T39: 18-23; ECF No. 37.)

On January 5, 2024, IMTT filed a Motion for Attorneys' Fees and Non-Taxable Costs. (ECF Nos. 42, 45.) The Local opposed the motion (ECF Nos. 44, 47, 49), and IMTT replied in further support (ECF No. 50).

## II. LEGAL STANDARD

"Under the American rule, each party normally must bear the burden of its own legal expenses, including attorneys' fees." *Jersey Shore Univ. Med. Ctr. v. Loc. 5058, Health Pros. & Allied Emps.*, No. CV164840MASDEA, 2017 WL 3671250, at *1 (D.N.J. Aug. 24, 2017) (quoting *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 305 (3d Cir. 1982)). There are, however, exceptions to this rule. For example, a Court may award attorneys' fees to a successful

---

bargaining unit employees whose claims were either denied or underpaid by reason of applying the New Plan instead of the Modified Plan, and reimburse them for the difference…

(Compl, Exhibit B, Opinion and Award.)

party where "his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Ford v. Temple Hosp.*, 790 F.2d 342, 346 (3d Cir.1986) (internal quotation marks and citations omitted). "To prevail under the "bad faith" exception, a showing of willful conduct on the part of the offending party or attorney must be made—some evidence of vexatious conduct designed to harass an adversary or delay litigation. *See Ford v. Temple*, 790 F.2d at 347; *Baker Indus., Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 209 (3d Cir.1985).[3]

The power to award attorney's fees under the "bad faith" exception to the American rule derives from the equitable powers of the federal courts, *Perichak v. Int'l Union of Elec. Radio and Mach. Workers*, 715 F.2d 78, 79 n.2 (3d Cir.1983), and covers both litigants and their counsel. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980). In order to properly exercise this discretion, the district court must balance the equities between the parties and "may award attorney's fees when the interests of justice so require..." *Perichak,* 715 F.2d at 80. The Third Circuit has further provided a two-step inquiry implementing the balancing test. "First [a court] must ... determine[ ] whether the plaintiff's action was brought in 'bad faith.' If it was not, no fees under the 'bad faith' exception may be awarded. If, however, a finding of 'bad faith' is made, then the district court must proceed to exercise its discretion either in favor of or against the successful party who seeks fees." *Conservation Force v. Porrino*, No. CV1604124FLWLHG, 2017 WL 1488129, at *10 (D.N.J. Apr. 25, 2017) (quoting *Perichak*, 715 F.2d at 80). Thus, a district court may, in its discretion, refuse to award attorney's fees even where it finds the existence of bad faith

---

[3] Both *Ford* and *Baker* involved the assessment of attorney's fees under 28 U.S.C. § 1927, the federal cost statute, which provides for the taxing of costs against attorneys who multiply court proceedings vexatiously; however, the underlying concept of what constitutes bad faith is equally applicable here, where attorney's fees are sought under the general equitable powers of the court. *U.S., for & on Behalf of Martinez Assocs., Inc. v. Acmat Corp.*, No. CIV. 85-2346, 1988 WL 113352, at *5 (D.N.J. Oct. 24, 1988).

5

if, in balancing the equities, it nevertheless determines that an award in a particular case would not serve the interests of justice." *Perichak*, 715 F.2d at 80.

### III.  DISCUSSION

IMTT requests that this Court use its inherent authority to award attorneys' fees and costs, arguing that the Local, through its President Cary Krand, acted "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" in pursuing this enforcement action without a valid basis. (ECF No. 42-1 at 6.) IMTT claims Krand knowingly signed a complaint with false allegations, ignored evidence that IMTT had complied with an arbitration award, and withheld critical information during discovery. (*Id*. at 1.) For example, IMTT claims that two years before Krand filed this action on behalf of the Local, the United Steelworkers of America (the "International") told him in a phone call and by letter that IMTT had complied with the arbitration award. (*Id*.) IMTT asserts that Krand did not disclose the International's letter in discovery, even though it was responsive to IMTT's document requests, and he did not disclose the phone conversation with the International during his deposition. (*Id*.) IMTT maintains that it only received that letter after the International's representative, Mike Fisher, produced it pursuant to a subpoena *duces tecum*. (*Id*.) IMTT contends that Krand pursued the action out of dissatisfaction with health benefits that he and the Local's bargaining committee negotiated in the most recent CBA between the "International and IMTT. (*Id*. at 1-2.) IMTT alleges that Krand deliberately misused the judicial process to try and undo the CBA by bringing this enforcement action without any sufficient legal or factual grounds of prevailing, leading to over $145,000 in legal costs for IMTT. (*Id*.)

In its opposition, the Local argues, inter alia, that IMTT's motion for attorney fees and costs is speculative and unsupported by evidence of any false statements by Krand. (ECF No. 44 at 8-9.) Further, the Local contends that IMTT's motion should be denied because the Court did not

make any findings of bad faith as to Krand or the Local during the summary judgment hearing (*id.* at 7-8) and that the requested fee amount of $136,160.85 is excessive and unreasonable for a narrow case focused on enforcing an arbitration award (*id.* at 10).

Here, the Court finds insufficient evidence that the Local acted in bad faith, vexatiously, wantonly, or for oppressive reasons. In this action, the Local sought to have IMTT comply with all terms of the Arbitration Award entered on February 2, 2018. (*See* generally Compl.) In issuing its decision on the merits of the parties' summary judgment motions, this Court found that the arbitrator contemplated negotiations in his award and that the parties' subsequent negotiation and development of the new CBA mooted any issue concerning sections (a) and (c) of the award. The Court noted that its ability to go back to that and modify anything subsequently negotiated by and between the parties "would not be a practical remedy." (T36:13-25, 37:1-8; 37:24-25, 38:1-6.) Further, concerning section (d), the Court found that George Abrams, in his deposition testimony, was unclear about whether he paid the $8,020.00 that would be due to him, which did not present any material issue of fact that he was entitled to reimbursement of those monies. (*See* T38:14-19.) Lastly, as to section (e), the Court found that nothing in the record showed any open items regarding reimbursement or any active claims that IMTT was aware of. (T37:9-23.) Thus, the Court concluded that "there [was] really nothing for the Court to do. There is no remedy on anything else. … We will have to grant summary judgment to IMTT." (T39:8-11.) The Court did not address or make any findings on the record that the Local or Krand acted in bad faith or acted wantonly or for oppressive reasons that warrant any award of attorney fees and nontaxable costs to IMTT. Further, while the Local's case may have not been strong, there is insufficient evidence in the record that indicates that the Local filed its Complaint or litigated in bad faith. Accordingly, the Court, in its discretion, declines to award attorneys' fees or costs to IMTT.

## IV.  CONCLUSION

For the foregoing reasons, IMTT's motion for attorney's fees and costs (ECF No. 42) is **DENIED**.  An appropriate Form of Order accompanies this Opinion.

**DATED**: August 30, 2024

_____
**JULIEN XAVIER NEALS**
United States District Judge

8